**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICAH RAY ALLEN, ID # 1816390,** ) | |
| Plaintiff, ) | |
| vs. ) | No. 3:12-CV-4863-O-BH |
| ) | |
| **OFFICER BURNETT, et al.,** ) | |
| Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Officer Burnett's Motion for Summary Judgment on the Issue of Qualified Immunity* ("Burnett Mot."), filed June 20, 2013 (doc. 35), *Defendant Kirby's Motion for Summary Judgment on the Issue of Qualified Immunity* ("Kirby Mot."), filed June 21, 2013 (doc. 38), and *Defendant Wren's Motion for Summary Judgment on the Issue of Qualified Immunity* ("Wren Mot."), filed June 21, 2013 (doc. 40). Based on the relevant filings and applicable law, the motions should be **DENIED**.

**I. BACKGROUND**

On or about October 19, 2012, Micah Ray Allen (Plaintiff) filed this action under 42 U.S.C. § 1983 against the Garland Police Department (GPD) and GPD Officers Burnett (Burnett), Kirby (Kirby), and Wren (Wren), alleging excessive force during an arrest. (Compl. at 3-4, First Magistrate Judge's Questionnaire (1st MJQ) Ans. 1).[1] On May 17, 2013, Plaintiff's claims against the GPD and the officers in their official capacities were dismissed, and his claims of excessive force against the officers in their individual capacities were permitted to proceed. (*See* docs. 14, 32, 33).

---

[1] Answers to the questions posed by the Court constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

After the officers filed an answer to the complaint, Plaintiff was ordered to, and did, file a Rule 7(a) reply to the answer. (*See* docs. 21, 23, 29, 34).

It is undisputed that in the early morning hours of August 29, 2011, Plaintiff engaged in a high-speed chase with GPD officers on a motorcycle. When the chase ended in Quinlan, Texas, Plaintiff abandoned his motorcycle and passenger and ran into a heavily wooded area to escape the officers. (Compl. at 4; Defendants' Joint Appendix in Support "Def. Appx", Ex. A, B, D (doc. 37)).[2] Plaintiff avers that he was lying unconscious in the woods when the Garland Police K-9 unit found him, and he awakened to a police dog attacking his right leg. Kirby allegedly released the dog to attack him two more times and stomped in his face, and that Burnett and Wren kicked and stomped him until he fell unconscious again. (Ruly 7(a) Reply (doc. 34)). When he again regained consciousness, he was in handcuffs. After he was brought to his feet, Burnett kicked him in the back and made him land on his face, Wren spit in his face, and the three defendants dragged him to the police car, where he again passed out. (*Id.*; 1st MJQ Ans. 2). Finally, Plaintiff claims that he "put up no resistance or any verbal offensiveness," that he was taken to the hospital for treatment for his injuries, and that as a result of the attack, he suffered deep contusions over his body, multiple scars from the dog attack, a broken rib, loss of vision in one eye, headaches, and panic attacks. (1st MJQ, Ans. 3, 4; Rule 7(a) Reply).

Kirby avers that he was involved in the high-speed chase of Plaintiff. When he arrived at the wooded area into which Plaintiff had run, Burnett advised him of Plaintiff's lengthy criminal history, including prior weapons charges and felony offenses, and of membership in a criminal gang.

---

[2] Plaintiff s evidence includes his sworn complaint, his sworn answers to two questionnaires, and his sworn Rule 7(a) reply. His sworn pleadings may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994).

Kirby was also informed that Plaintiff had Hepatitis C. After Kirby and police dog Boomer ("Boomer") looked for Plaintiff in the woods for over an hour, Boomer located Plaintiff. Kirby deployed Boomer at Plaintiff, but only after he warned Plaintiff that he was going to release the dog and gave Plaintiff the opportunity to surrender. Kirby did so after considering all of the circumstances and because he believed that Plaintiff could be armed and dangerous given his criminal history and behavior on that day. Plaintiff reacted by punching Boomer, and Kirby used his leg to shove Plaintiff on his shoulder to force him back to the ground. Plaintiff then grabbed Boomer by the throat, after which Kirby struck Plaintiff three times on his right arm with a flashlight to force him to release Boomer. After Burnett arrived at the scene, Kirby heard him yell "knife," saw Plaintiff reach his arms towards his waist, and saw Burnett strike Plaintiff several times in a effort to gain control of Plaintiff's arms. After Plaintiff's arms were behind his back, Kirby moved Boomer several feet away from Plaintiff. (Def. Appx D).

Burnett avers that he was also involved in the high-speed chase, and he ordered Plaintiff to stop when he ran into the woods, but Plaintiff ignored him and continued running. Burnett then waited for backup, including the K-9 unit. When Burnett and Wren spoke to the passenger on Plaintiff's motorcycle, they learned his name and address. Dispatch informed them of his extensive criminal background, including weapons and evading arrest charges, and his membership in a gang. They also learned that Plaintiff has Hepatitis C. Once Kirby arrived with Boomer, they began searching for Plaintiff in the woods. During this search, he heard Kirby announce that he would send the dog in unless Plaintiff surrendered. He approached the area and heard Kirby order Plaintiff to stop hitting Boomer and saw Plaintiff repeatedly punch Boomer and attempt to choke him. While Kirby and Burnett attempted to gain control of Plaintiff and separate him from Boomer, Burnett saw

3

a handle of a knife clipped to Plaintiff's pants. He warned the other officer of the knife and struck Plaintiff in his arms two or three times to disrupt his arm movements so that he could be handcuffed; he did not do it to injure Plaintiff. (Def. Appx A).

Wren avers that when he arrived at the scene, he learned about Plaintiff's criminal history from the dispatcher and then assisted Kirby and Burnett in searching for Plaintiff in the woods. When he arrived at Plaintiff's location in the woods, he saw Plaintiff swinging his arms at Burnett in an attempt to hit him. He and Burnett yelled at Plaintiff to stop fighting and show his hands, and then Wren saw Burnett strike Plaintiff with a closed fist several times to his arm and shoulder in an apparent attempt to gain control of Plaintiff. Wren then saw Plaintiff fighting with Boomer, heard Burnett yell "knife," and saw Burnett strike Plaintiff two or three times in an attempt to gain control of his arms and hands. Once Burnett and Kirby gained control of Plaintiff's left arm, they placed it behind his back and handcuffed him. Wren observed the interactions between Burnett, Kirby, and Plaintiff while providing coverage for the officers with the rifle he was carrying. (Def. Appx B). All of the defendants then escorted Plaintiff through the dense woods and brush, with each individual tripping numerous times. All of the defendants deny spitting on Plaintiff. (Def. Appx A, B, D). The defendants have submitted an affidavit attesting to Plaintiff's long criminal history. (Def. Appx C).

The parties agree that after Plaintiff was arrested, he was transported to the hospital for medical treatment. (1st MJQ, Ans. 4; Def. Appx, Ex. A, B, E). The defendants have also submitted an affidavit from a nurse at Baylor Hospital averring that at the hospital, Plaintiff told her he had consumed methamphetamine and alcohol before the chase and that his injuries occurred when he ran through the woods, tripped over brush, and fell out of a tree. (Def. Appx E).

4

All of the defendants moved for summary judgment, alleging that they are entitled to qualified immunity. (docs. 35-41). Plaintiff did not file a response to the motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also*

5

*RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[3] Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Here, the defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that the defendants violated his constitutional rights, and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

### III. QUALIFIED IMMUNITY

Defendants move for summary judgment on grounds that they are protected from suit by qualified immunity.

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

[3] Courts generally liberally construe a *pro se* plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, court consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

A.   **Violation of a Constitutional Right**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the

course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[4] *Graham v. Connor*, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.*; *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

Whether Plaintiff has shown a Fourth Amendment excessive force claim depends on whether he has shown that the defendants' alleged use of force was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

It is undisputed by the parties that Plaintiff attempted to evade arrest, led police officers on

---

[4] A shooting itself may qualify as a seizure for purposes of the Fourth Amendment. *See Flores v. City of Palacios*, 381 F.3d 391, 396-97 (5th Cir. 2004).

8

a high-speed chase, and then ran into a heavily wooded area. Plaintiff has also not disputed his lengthy criminal history that was recounted to the defendants prior to their search for him in the woods. The relevant facts present a situation where Plaintiff posed a threat to the safety of the officers, thereby rendering some force by the arresting officers to be objectively reasonable. However, the Court must balance the amount of force with the need for force, and the parties' versions of the facts differ substantially regarding the amount of force that was used during Plaintiff's arrest. Where the evidence raises a genuine issue of material fact, courts "assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under [the] circumstances." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir. 2000).

Plaintiff has presented sworn statements that he was lying unconscious on the ground when he was attacked by the police dog, and that he continued lying on the ground after the initial attack by Boomer. He avers that he offered no resistance towards the officers, but that Kirby permitted the dog to attack him two more times, that Burnett and Wren kicked and stomped him until he was unconscious, and that Burnett kicked him in the back again when he was handcuffed. Plaintiff has also presented evidence that because of this use of force, he had deep contusions over his body, a broken rib, and loss of vision in one eye. Although there is undisputed evidence that Plaintiff had engaged in a dangerous high-speed chase with the officers, was attempting to evade arrest, and was warned before a police dog was released on him, there is disputed evidence that the defendants continued to use force against him after he was lying on the ground not resisting the officers. The Fifth Circuit has held that it is objectively unreasonable to use similar force against a suspect who is not resisting. *See Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013) (denying qualified immunity where officer used a taser on a subdued and handcuffed suspect, even where suspect had

9

initially pulled away from officer's attempt to handcuff him); *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir.2012) (denying qualified immunity where officers immediately resorted to using a nightstick and taser where suspect did not pose threat to officers' safety and did not resist officers or attempt to flee); *Bush v. Strain,* 513 F.3d 492, 501-02 (5th Cir. 2008) (denying qualified immunity where office forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs).

Plaintiff has presented sufficient summary judgment evidence to create a genuine issue of material fact as to the circumstances that led to the Defendants' use of force against him during his arrest. Under his version of the facts, a reasonable jury could find that the defendants violated his constitutional rights by using force against him that was excessive to the need and that this force was the cause of his injuries.

**B.      Objective Reasonableness in Light of Clearly Established Law**

To show the inapplicability of the asserted qualified immunity defense, Plaintiff must claim that the violation of his Fourth Amendment rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). This is an "entirely separate inquiry" from the reasonableness determination inherent in considering whether the Plaintiff has claimed a Fourth Amendment excessive force claim. *Ontiveros*, 564 at 383 n.1. For purposes of qualified immunity, "clearly established" means that the"contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice – in most cases, the law should be clear in a more particularized sense related to the specific context in

10

which the officer is acting. *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (discussing both scenarios); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (discussing both scenarios). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

At the time of Plaintiff's August 2011 arrest, it was clearly established that the permissible amount of force necessary to arrest a suspect depends, in part, on whether the suspect was resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. Under Plaintiff's version of events, he was lying on the ground and not resisting arrest or attempting to flee when the officers kicked and stomped him, permitted a police dog to attack him several times, and kicked him again after he was handcuffed. The officers should have known that this level of force was not permissible. *See Bush v. Strain*, 513 F.3d at 502 (holding that the defendant should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued).

In summary, Plaintiff has provided competent summary judgment evidence sufficient to create a genuine issue of material fact regarding the events in August of 2011. His version of the facts, which the Court must take as true for purposes of this motion, suffices to support a finding that Defendants violated his constitutional rights by using excessive force against him and that the violation was objectively unreasonable under clearly established law at the time of the violation. The disputed, material facts regarding the use of force preclude "the Court from granting summary judgment

on the ground of qualified immunity." *Estate of Henson v. Wichita Cnty., Tex.*, 652 F. Supp. 2d 730, 748 (N.D. Tex. 2009). Defendants' motions for summary judgment should therefore be denied.

## IV. CONCLUSION

*Officer Burnett's Motion for Summary Judgment on the Issue of Qualified Immunity* (doc. 35), *Defendant Kirby's Motion for Summary Judgment on the Issue of Qualified Immunity* (doc. 38), and *Defendant Wren's Motion for Summary Judgment on the Issue of Qualified Immunity* (doc. 40) should be **DENIED**, and Plaintiff's claims of excessive force should be permitted to proceed.

**SO RECOMMENDED** on this 28th day of January, 2014.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE